OPINION
{¶ 1} Appellant, Timothy Aarron Brown, appeals the May 31, 2001 judgment entry in which the Trumbull County Court of Common Pleas found him guilty of trafficking in cocaine, corrupting another with drugs, and carrying a concealed weapon.
 {¶ 2} On February 10, 2000, the grand jury issued a superceding indictment charging appellant with: (1) trafficking in cocaine, in violation of R.C. 2925.03(A) and (C)(4)(d), a felony of the second degree; (2) corrupting another with drugs, in violation of R.C.2925.02(A)(4)(c), a felony of the second degree; (3) carrying a concealed weapon, in violation of R.C. 2923.12(A) and (D), a felony of the fourth degree; and (4) possessing criminal tools, in violation of R.C. 2923.24(A) and (C), a felony of the fifth degree.[1] A jury trial took place on April 16, 2001.
 {¶ 3} The evidence at trial revealed that in February 1999, the Bureau of Alcohol, Tobacco, and Firearms ("ATF") contacted Agent Marcus Anderson ("Agent Anderson") of the Drug Enforcement Agency ("DEA") and offered the services of Jason Coffer ("Coffer"), a confidential informant. Coffer had been arrested by the ATF on federal firearms charges, and he agreed to assist the DEA in certain investigations to possibly receive a more lenient sentence than the ten to fifteen year sentence he was facing. Specifically, Coffer helped Agent Anderson set up a drug-supplier, Mark Naylor ("Naylor"), who was Coffer's childhood friend.
 {¶ 4} On March 3, 1999, at the request of Agent Anderson, Coffer contacted Naylor and told him he wanted an ounce of cocaine. Agent Anderson secured $950 in buy money. Agent Anderson accompanied Coffer to the Trumbull Plaza on Parkman Road in Warren, Ohio where the transaction was to occur. As Agent Anderson and Coffer arrived at the parking lot, Coffer spotted Naylor's car. Donnell Stubbs ("Stubbs"), who was seventeen at the time, accompanied Naylor. According to Agent Anderson, Coffer also "started hollering `There's the other guy. There's the other guy,'" in reference to a purple truck that was located in the Trumbull Plaza parking lot. Naylor approached Coffer's auto, and Agent Anderson counted $950 and gave it to Coffer. Coffer in turn handed the money to Naylor, and Naylor returned to his vehicle. A bit later, Stubbs exited Naylor's auto and entered the passenger side of the purple truck that was in the parking lot.
 {¶ 5} Agent Anderson described what he observed as "a light skinned black male" in the purple truck. Stubbs testified that it was appellant who was in the truck and that he had contacted appellant about the purchase of cocaine.[2] The testimony revealed that after Stubbs left the purple truck, he returned to Naylor's vehicle. Even though Agent Anderson did not see Stubbs carry anything back from appellant's truck, he testified that Stubbs was wearing a jacket. After Naylor and Stubbs sat in Naylor's car for a few minutes, Naylor exited the auto and approached Coffer's vehicle. Naylor gave Coffer a red rag that concealed a plastic bag which contained a substance that was later determined to be 27.2 grams of cocaine.
 {¶ 6} Throughout this transaction, Warren Police Officer and DEA Agent Melanie Gambill ("Agent Gambill") was parked in a restaurant parking lot, which was located across the street from the Trumbull Plaza. She followed the purple truck as it left the parking lot and quickly viewed the license plate which she thought read "A-A-R-O-N." Agent Gambill ran the plate and when it came back, it was registered on a silver Chrysler to Aaron Smith of Newark, Ohio.
 {¶ 7} On June 15, 1999, Naylor was arrested, and he also agreed to cooperate in the drug investigations. He told Agent Anderson that he was getting his drugs through Stubbs from a man known as Aarron. Naylor was familiar with the purple truck, and he told Agent Anderson that the purple truck had a vanity plate that read "A-A-R-R-O-N." When that plate was run, it was registered to appellant. Naylor identified appellant as the driver of the purple truck on March 3, 1999, after viewing a photo array. Agent Anderson further testified that the state made a deal with Naylor that his state time would run concurrent with his federal sentence. An indictment was issued, and Agent Gambill testified that on the day she arrested appellant, she located a .38 caliber handgun under the driver's seat of his truck while conducting an inventory search.
 {¶ 8} The jury convicted appellant of trafficking in cocaine, corrupting another with drugs, and carrying a concealed weapon. However, appellant was acquitted of possessing criminal tools. Appellant received a term of imprisonment of five years for trafficking in cocaine and corrupting another with drugs and a term of one year for carrying a concealed weapon. All terms were to be served concurrently. Appellant filed the instant appeal and now assigns the following as error:
 {¶ 9} "[1.] The discretion exercised by the [t]rial [c]ourt as to the prior inconsistent statements of [Coffer] resulted in the denial of [appellant's] Sixth Amendment rights to a fair trial and confrontation of witnesses under the United States Constitution.
 {¶ 10} "[2.] The conviction of [appellant] was not based upon sufficient evidence and was also against the manifest weight of the evidence."
 {¶ 11} Under the first assignment of error, appellant argues that his right to a fair trial and confrontation of witnesses was deprived. Appellant claims that the prosecutor and Agent Gambill reminded Coffer of the deal he made with the state. Appellant also contends that his ability to cross-examine Coffer as to prior inconsistent statements was improperly restricted.
 {¶ 12} With regard to appellant's allegation that the prosecutor improperly referred to the obligation of Coffer to tell the truth as part of his plea agreement, it is our view that the prosecutor was simply pointing out the details and terms of the plea agreement entered into by Coffer. In State v. Williams (1997), 79 Ohio St.3d 1, 12-13, the Supreme Court of Ohio held that the introduction of the terms of a plea agreement was proper as was the introduction of the possible ramifications to the witness if he failed to live up to his end of the bargain.
 {¶ 13} Furthermore, the test for prosecutorial misconduct is whether remarks made by the prosecutor were improper and, if so, whether those remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160, 165. The alleged misconduct of a prosecutor during a trial cannot be made a ground for error unless the conduct deprives the defendant of a fair trial. Statev. Bies (1996), 74 Ohio St.3d 320, 326. The effect of any alleged misconduct must be judged in the context of the entire trial. State v.Keenan (1993), 66 Ohio St.3d 402, 410.
 {¶ 14} The Sixth Amendment to the U.S. Constitution and the Ohio Rules of Evidence guarantee the right of a criminal defendant to confront witnesses against him for biases they may hold. State v. Minier (Sept. 28, 2001), 11th Dist. No. 2000-P-0025, 2001 WL 1149461, at 1. A criminal defendant's right to confront and cross-examine witnesses is not unlimited. Id. at 2, citing Delaware v. Van Arsdall (1986), 475 U.S. 673,679. "A trial court retains `wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" Id., quoting Van Arsdall, supra. Thus, "`the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" (Emphasis sic.) Id., quoting Delaware v. Fensterer (1985), 474 U.S. 15, 20. Further, the "constitutional right to cross-examine adverse witnesses does not authorize defense counsel to disregard sound evidentiary rules."State v. Amburgey (1987), 33 Ohio St.3d 115, 117. While cross-examination itself is a matter of right, the extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. State v. Green (1993), 66 Ohio St.3d 141, 147, citingAlford v. United States (1931), 282 U.S. 687, 691.
 {¶ 15} Evid.R. 608(B) concerns evidence of character and conduct of a witness and states that: "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of a crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness ***." In State v. Brooks (1996), 75 Ohio St.3d 148, 151, the Supreme Court stated: "Evid.R. 608(B) vests a trial court with discretion to allow cross-examination about specific instances of conduct of a witness `if clearly probative of truthfulness or untruthfulness.'" Thus, there is a requirement of a high degree of probative value of instances of prior conduct as to truthfulness or untruthfulness of the witness before the trial court will allow such cross-examination. Staff Notes to Evid.R. 608; State v. Williams (1981), 1 Ohio App.3d 156, 157.
 {¶ 16} In the instant matter, the primary witness implicating appellant was not Coffer. In fact, Coffer did not place appellant at the scene of the drug deal, Stubbs did. Coffer also did not state that appellant was involved in the drug deal. Coffer's testimony only revealed that he saw Stubbs exit Naylor's car and get into the purple truck. Coffer never testified as to who was driving the purple truck, nor did he offer the license plate number for the truck. Further, Agent Anderson, Naylor and Stubbs did not state that there was any interaction between appellant and Coffer. Hence, even if Coffer had not testified, the jury would have still heard the testimony of Agent Anderson, Naylor and Stubbs. Appellant fails to demonstrate that any statements made by the court or the prosecutor interfered with his right to present a defense.
 {¶ 17} In addition, it is unclear how appellant rights were restricted. Coffer's testimony revealed that the following exchange took place on the telephone between Coffer and defense counsel:
 {¶ 18} "Q. What did you tell me about *** the transaction at the time when you called me yesterday morning?
 {¶ 19} "A. You called me.
 {¶ 20} "Q. I called you back, that's correct. As a result of that conversation what did you say to me?
 {¶ 21} "A. I just told you that, you know, that I never seen your client there and that's how I would be testifying.
 {¶ 22} "Q. Did you also recall telling me that you didn't remember anybody walking to other vehicles, that Naylor walked up to you, handed you money and you handed him drugs?
 {¶ 23} "A. No. I think you misunderstood me.
 {¶ 24} "Q. What did you say?
 {¶ 25} "A. I really don't remember what I said, because when you called me it kind of, you know, I didn't realize you were going to be calling me and it kind of shocked me. I don't remember what I said to you exactly. But it happened just like I said when I was — —
 {¶ 26} "***
 {¶ 27} "Q. What did you tell the [prosecutor's office] the first time you talked with them about this transaction?
 {¶ 28} "A. I talked to them, and I really didn't remember. It's been two years ago *** so I really didn't remember exactly, every detail that had happened. But — — .
 {¶ 29} "Q. Did you tell them, when you first talked to them, what I said that you said, that Naylor walked up to you, handed you money and you handed him drugs and there was no other movement? Did you tell them that the first time?
 {¶ 30} "A. No. I told her I really didn't remember. And she let me look over my statement, and I said, `Yes, that's what happened.'
 {¶ 31} "Q. Did she also tell you that if you did not recall what your statement is, that it was possible that your parole could be revoked?
 {¶ 32} "A. Yes.
 {¶ 33} "Q. But it's still your statement that I initiated the first phone call?
 {¶ 34} "A. You did call me, yes. The first time I ever talked to you in my life you called me."
 {¶ 35} Based on the foregoing exchange, it is our view that appellant's trial attorney was able to cross-examine Coffer in the presence of the jury. Appellant has not offered any instances of conduct where his attorney began cross-examining Coffer and the questioning was prohibited.
 {¶ 36} Turning to appellant's argument that the in camera examination of Coffer was improper, this court would note that appellant failed to object when the trial court cautioned appellant to tell the truth. The party seeking to challenge the court's questioning of a witness is required to raise an objection with the trial court.Mentor-on-the-Lake v. Giffin (1995), 105 Ohio App.3d 441, 448. Specifically, Evid.R. 614 provides:
 {¶ 37} "(C) Objections. Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present."
 {¶ 38} In State v. Davis (1992), 79 Ohio App.3d 450, 455, the court explained that "[t]he failure of a party to object in accordance with Evid.R. 614(C) waives consideration of the claimed error on appeal because the failure to object deprives the trial court of any opportunity to correct the alleged error."
 {¶ 39} Here, since appellant did not object to the admonition to tell the truth that the trial court gave Coffer, that issue is waived for purposes of appeal. Appellant's first assignment of error lacks merit.
 {¶ 40} Under the second assignment of error, appellant argues that his conviction was not based upon sufficient evidence and was against the manifest weight of the evidence.
 {¶ 41} In making a determination with respect to the sufficiency of the evidence in a criminal prosecution, this court will not reverse a verdict if there is substantial evidence from which the trier of fact could conclude that all of the elements of the offense have been proven beyond a reasonable doubt. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 5. The test for manifest weight is whether after reviewing the record, weighing the evidence, and considering the credibility of the witnesses, we determine that the trier clearly lost its way. Id. When reviewing a claim that the judgment was against the manifest weight of the evidence, we must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. Statev. Martin (1983), 20 Ohio App.3d 172, 175; State v. Thompkins (1997),78 Ohio St.3d 380, 387. Generally, the weight to be given to the evidence and the witnesses' credibility is primarily for the jury to decide. Statev. Thomas (1982), 70 Ohio St.2d 79, syllabus.
 {¶ 42} Appellant was found guilty of trafficking in cocaine, in violation of R.C. 2925.03(A), which provides that: "[n]o person shall knowingly sell or offer to sell a controlled substance." Under R.C.2925.03(C)(4):
 {¶ 43} "[i]f the drug involved in the violation is cocaine ***, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows:
 {¶ 44} "***
 {¶ 45} "(d) *** if the amount of the drug involved equals or exceeds ten grams but is less than one hundred grams of cocaine *** and if the offense was committed in *** the vicinity of a juvenile, trafficking in cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree."
 {¶ 46} Pursuant to R.C. 2925.02(A)(4)(c):
 {¶ 47} "No person shall knowingly do any of the following *** [b]y any means ***:
 {¶ 48} "*** [i]nduce or cause a juvenile who is at least two years the offender's junior to commit a felony drug abuse offense, when the offender knows the age of the juvenile or is reckless in that regard.
 {¶ 49} In this matter, the jury was presented with evidence consisting of testimony by Agent Anderson, Naylor, Stubbs, Coffer, and Agent Gambill, who were present on March 3, 1999, when the drug deal took place. Agent Anderson and Coffer arrived at the Trumbull Plaza parking lot to meet Naylor and Stubbs. Upon their arrival, they also noticed the purple truck that belonged to appellant. Naylor approached Coffer and received $950 from Coffer and Agent Anderson. Naylor took the $950, and according to the testimony of Naylor and Stubbs, Stubbs delivered the money to appellant's truck in return for the white substance that was later given to Coffer. There was also expert testimony that the substance sold tested positive as being cocaine. Further, the evidence revealed that Stubbs was a juvenile on March 3, 1999, and that appellant knew his age as he lived with Stubbs' mother for a period of time.
 {¶ 50} The credibility of the testimony offered by the witnesses was within the exclusive province of the trier of fact. Here, the jury, as trier of fact, could reasonably conclude that the testimony presented by the prosecution was believable. In light of the evidence produced at trial, we conclude that there was sufficient evidence presented to meet all of the elements of the crimes and that the jury did not lose its way in convicting appellant for trafficking drugs, in violation of R.C.2925.03, and corrupting another with drugs, in violation of R.C.2925.02(A)(4)(c).
 {¶ 51} As for the conviction for carrying a concealed weapon, Agent Gambill testified that on the day she arrested appellant, she located a handgun in his truck. Therefore, there was competent evidence to convict appellant with carrying a concealed weapon, and the conviction was not against the manifest weight of the evidence. Appellant's second assignment of error is meritless.
 {¶ 52} For the foregoing reasons, appellant's assignments of error are not well taken. The judgment of the Trumbull County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY and CYNTHIA WESTCOTT RICE, JJ., concur.
[1] Initially, on September 16, 1999, appellant was indicted on trafficking in cocaine and corrupting another with drugs.
[2] Stubbs testified that he was familiar with appellant because appellant once lived with Stubbs' mother.