OPINION JUDGMENT ENTRY
{¶ 1} Appellant Steven Wilbert Dixon appeals from his conviction for rape and gross sexual imposition in the Court of Common Pleas, Richland County. The relevant facts leading to this appeal are as follows.
 {¶ 2} On December 5, 2002, the Richland County Grand Jury indicted appellant on two counts of rape and two counts of gross sexual imposition. The indictment alleged that the crimes had taken place during the period from September 1, 2002 until September 27, 2002, shortly after appellant had moved in with Stacy Gilmore, the eleven-year-old female victim's mother.
 {¶ 3} During pre-trial discovery, appellant's trial counsel issued a subpoena duces tecum to the Richland County Children's Services Board ("CSB"), seeking all records concerning the victim, the victim's mother, and the victim's biological father. On July 16, 2003, CSB counsel filed a motion to quash the subpoena. On July 17, 2003, prior to opening arguments, the court conducted a brief hearing on the motion to quash and an in camera inspection of the pertinent CSB files. Thereafter, the court found that the materials in the CSB file were not discoverable.
 {¶ 4} The jury trial proceeded on July 17 and 18, 2003. The jury subsequently returned a verdict of guilty on all counts. On July 23, 2003, the court sentenced appellant to nine years in prison for each of the two rape counts, to be served consecutively. The court also sentenced appellant to three years in prison for each of the two counts of gross sexual imposition, to be served concurrently with the rape sentences, for a total sentence of eighteen years.
 {¶ 5} Appellant thereafter timely appealed, and herein raises the following three Assignments of Error:
 {¶ 6} "I. The trial court erred in granting the motion to quash the subpoena duces tecum and in granting protective orders pursuant to Ohio Revised Code Section 5153.17 and2151.421(H)(1)(2).
 {¶ 7} "II. Each and every specific issue raised in the issues presented with respect to assignment of error no. 3 regarding incompetency of counsel, were plain error.
 {¶ 8} "III. Appellant was deprived of effective assistance of counsel approvided (sic) by the sixth amendment of the United States Constitution and Article 1 Section 10 of the Ohio Constitution, as well as the due process protection under theFourteenth Amendment of the United States Constitution and in Article 1 Section 16 of the Ohio Constitution.
 I. {¶ 9} In his First Assignment of Error, appellant argues that the trial court erred in granting the motion to quash the CSB records subpoena. We disagree.
 {¶ 10} An appellate court's standard of review on most evidentiary matters is that of abuse of discretion. See State v.Rahman (1986), 23 Ohio St.3d 146, 152; State v. Sage (1987),31 Ohio St.3d 173, 180. Accordingly, we generally apply an abuse of discretion standard when reviewing a trial court's decision to quash a subpoena. See Petro v. N. Coast Villas Ltd. (2000),136 Ohio App.3d 93, 96. CSB investigative records are protected by R.C. 5153.17, which mandates as follows: "The public children services agency shall prepare and keep written records of investigations of families, children, and foster homes, and of the care, training, and treatment afforded children, and shall prepare and keep such other records as are required by the department of job and family services. Such records shall be confidential, but, except as provided by division (B) of section3107.17 of the Revised Code, shall be open to inspection by the agency, the director of the county department of job and family services, and by other persons, upon the written permission of the executive secretary."
 {¶ 11} Appellant nonetheless directs us to R.C.2151.421(H)(1), which reads in pertinent part: "Except as provided in divisions (H)(4), (M), and (N) of this section, a report made under this section is confidential. * * * In a criminal proceeding, the report is admissible in evidence in accordance with the Rules of Evidence and is subject to discovery in accordance with the Rules of Criminal Procedure." Appellant essentially contends that he was thereby entitled, as the defendant in a criminal case, to the "complete investigation file concerning the allegations that [the girl victim] had previously made." Appellant's Brief at 6.
 {¶ 12} We are unpersuaded by appellant's reading of the above statutes. A "report," as opposed to "records," is clarified in R.C. 2151.421(A)(1)(a), and refers to an incident report made to a children's services agency or law enforcement authority by a person described in division (A)(1)(b), such as a therapist or school teacher, "who is acting in an official or professional capacity and knows or suspects that a child under eighteen years of age or a mentally retarded, developmentally disabled, or physically impaired child under twenty-one years of age has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child * * *." InSharpe v. Sharpe (1993), 85 Ohio App.3d 638, the Eleventh District Court of Appeals recognized "* * * R.C. 2151.421(H)(1) references only the `reports' which are required to be made by certain categories of persons designated in subsections (A) and (B) of that section. Thus, `reports' as used there is very limited in its scope and is not so inclusive as to encompass any report made by anyone regarding the subject child." Id. at 644.
 {¶ 13} In the case sub judice, appellant incorrectly attempts to expand the limited confidentiality exception concerning R.C.2151.421 "reports" into an unfettered right to the discovery of all CSB files connected with this victim, past and present. Moreover, it is undisputed that the trial court duly conducted an in camera review of the CSB records (see, e.g., Johnson v.Johnson (1999), 134 Ohio App.3d 579, 585). Having reviewed the CSB documents sealed by the trial court in this matter, we find the disclosure of the records would not have outweighed the confidentiality considerations of R.C. 5153.17. See State v.
Fuson (Aug. 11, 1998), Knox App. No. 97CA23. We therefore find no demonstration of an abuse of discretion by the court in denying the records subpoena following its in-camera review.
 {¶ 14} Accordingly, appellant's First Assignment of Error is overruled.
 III. {¶ 15} We will address appellant's Third Assignment of Error out of sequence. In his Third Assignment of error, appellant contends he was denied the effective assistance of trial counsel. We disagree.
 {¶ 16} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley
(1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998), 81 Ohio St.3d 673, 675,693 N.E.2d 267.
 {¶ 17} Appellant raises the following areas of alleged ineffective assistance: (1) the failure of trial counsel to object to the treating nurse's testimony; (2) failure to object to certain comments by the prosecutor during closing arguments; (3) failure to move for acquittal of the gross sexual imposition counts; (4) failure to object to alleged hearsay testimony; and (5) failure to object to testimony allegedly suggesting that appellant had "ties to Detroit." We will address each in turn.
Nurse's Testimony
 {¶ 18} Appellant directs us to the following question and answer elicited from Elaine Siewert, an emergency room nurse, during the prosecution's case-in-chief:
 {¶ 19} "Q. Did you [,] based upon your education, training, and experience, did you find [the girl victim's] mannerisms consistent with her statement that she gave you?
 {¶ 20} "A. Yes."
 {¶ 21} Appellant contends this exchange violated holding inState v. Boston (1989), 46 Ohio St.3d 108, wherein the Ohio Supreme Court held the court held that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." Id. at syllabus. We note Nurse Siewert, whom the court qualified as an expert (Tr. at 331), was being questioned at the time concerning the girl victim's demeanor and affect during her examination, such as her poor eye contact. See Tr. 336-337. Appellant herein provides no authority that the questioning at issue was the equivalent of an opinion as to veracity, as analyzed in Boston.
 Prosecutorial Remarks
 {¶ 22} Appellant next directs us to the following comments made by the prosecutor during closing arguments:
 {¶ 23} "This man, Steven Dixon, came into a home, had the opportunity to be a stepdad, a protector and educator, someone who provided for the family. And what did he do? He did something worse than killing Shante Gilmore, because had he killed her, she wouldn't have to live with what she lives with today. Shante Gilmore has had to live with what this man did to her time and time again. That is the reason she didn't want to take the bus home, according to Christin Lehnhart."
 {¶ 24} Later on in his argument, the prosecutor, according to appellant, uses the "golden rule" asking the jurors to put themselves in a place of a party to the case:
 {¶ 25} "But let me come back to what the Defendant sent to Stacy Gilmore: `A True Child of God Forgives Others,' he circles. Is that something you would do if you were being charged with rape?
 {¶ 26} "* * *
 {¶ 27} "Why would you close the door to an 11 year old stepdaughter's room and be alone with her? Because you don't want anybody to hear what you are doing to her. That is why. Those of you who are grandparents or fathers, is that something you would do it (sic) you are innocent?" Tr. at 413, 431.
 {¶ 28} Generally, a wide latitude is allowed for a prosecutor in closing argument. State v. Bies (1996), 74 Ohio St.3d 320,326, 658 N.E.2d 754. In the context of the entire transcript in this matter, we are unpersuaded by appellant's arguments.
Motion for Acquittal
 {¶ 29} Appellant further contends that his trial counsel should have moved for acquittal on the gross sexual imposition charges on the alleged basis that the state presented insufficient evidence to convict.
 {¶ 30} In considering issues concerning the sufficiency of the evidence, our standard is as follows: "* * * [T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,273, 574 N.E.2d 492. R.C. 2907.05(A)(5) forbids a person from having sexual contact with another, not the spouse of the offender, when the other person is less than thirteen years old. Appellant specifically claims the girl victim's testimony lacked the specificity describing the acts resulting in gross sexual imposition. In support, appellant selectively presents a portion of the girl victim's testimony; nonetheless, in addition to other evidence in the record, we note the transcript further reveals the following exchange between victim and prosecutor:
 {¶ 31} "Q. Okay. So he was standing by the door and he had unzipped his pants?
 {¶ 32} "A. Yes.
 {¶ 33} "Q. Okay. What happened next?
 {¶ 34} "A. And then I seen white stuff coming out.
 {¶ 35} "Q. Okay. Did he ever ask you to touch his private?
 {¶ 36} "A. Yes.
 {¶ 37} "Q. Okay. What did he say to you?
 {¶ 38} "A. He said, `Touch this.' I said, `No.'
 {¶ 39} "Q. Okay. Was that the first time or the next time you are talking about?
 {¶ 40} "A. The next time.
 {¶ 41} "Q. Okay. Where were you when this white stuff came out of his private?
 {¶ 42} "A. On the bed.
 {¶ 43} "Q. All right. Did anything happen before the white stuff came out of his private? Did he touch you prior to that happening?
 {¶ 44} "A. Huh?
 {¶ 45} "Q. Did he touch you before the white substance came out of his private?
 {¶ 46} "A. Yes.
 {¶ 47} "Q. Okay. Where did he touch you?
 {¶ 48} "A. In my private.
 {¶ 49} "Q. Okay. Tell me how. Tell me how it happened.
 {¶ 50} "A. He pulled — he told me to pull down my pants again, and I did it. And I did it. And then after that he said, `Pull down your underwears.' And I didn't do that. Then he said, `Pull down your underwears so I can put the white stuff in.' Then he took off my shoes, my, uhm, pants and my underwears." Tr. at 275-276. Upon review, we are unpersuaded that trial counsel's decision not to move for acquittal on the gross sexual imposition charges fell below a standard of reasonable representation.
Hearsay Issues
 {¶ 51} Appellant claims that trial counsel was ineffective for failing to object to testimony by the investigating officer, a social worker, and the nurse recounting what the girl victim told them. However, we are unpersuaded that such would have been outside the purview of permissible police investigative or medical diagnosis evidence.
Reference to Detroit
 {¶ 52} Appellant makes the cursory suggestion that a question revealing that appellant "come[s] from Detroit" created a stigma for the jury. We find appellant's unsupported contention fails under App.R. 16(A)(7).
 {¶ 53} Upon review of the record, we are unpersuaded that trial counsel failed to provide reasonable representation on the above five points. It is well established that tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. See State v.Carter (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965,1995-Ohio-104.
 {¶ 54} We find appellant was not deprived of the effective assistance of trial counsel. Appellant's Third Assignment of Error is overruled.
 II. {¶ 55} In his Second Assignment of Error, appellant, without additional elaboration, argues that the errors asserted in his Third Assignment of Error, even if left unobjected at trial, constituted plain error. We disagree.
 {¶ 56} In order to prevail under plain error, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. State v. Baskin
(Nov. 9, 2000), Stark App. No. 1999CA00240, 2000 WL 1700039. Notice of plain error must be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus; State v. D'Ambrosio (1993),67 Ohio St.3d 185, 191.
 {¶ 57} Upon review and as per our earlier analysis, we are unpersuaded the aforementioned asserted errors rose to the level of a manifest miscarriage of justice. Appellant's Second Assignment of Error is therefore overruled.
 {¶ 58} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is hereby affirmed.
Wise, J., Gwin, P.J., and Edwards, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
Costs to appellant.