[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 320.]

THE STATE OF OHIO, APPELLEE, *v*. BIES, APPELLANT.

[Cite as *State v. Bies*, 1996-Ohio-276.]

*Criminal law—Aggravated murder—Death penalty upheld, when.*

(No. 94-1538—Submitted November 7, 1995—Decided January 17, 1996.)

APPEAL from the Court of Appeals for Hamilton County, No. C-920841.

———————————

{¶ 1} Shortly after daybreak on May 12, 1992, police found the bludgeoned body of ten-year-old Aaron Raines in the basement of an abandoned building in the 2100 block of West Eighth Street in Cincinnati. A nine-week investigation led the police to two suspects: Darryl "Junior" Gumm and defendant-appellant Michael Bies.

{¶ 2} The police investigation revealed that the day before Aaron's body was discovered, Gumm and Bies were drinking beer and idling the day away in a park adjacent to the abandoned building in which Aaron's body was found. As evening approached, they decided they wanted to have sex with a child.

{¶ 3} Aaron Raines, a small ten-year-old, was playing in the park that evening. Aaron had had some physical difficulties as the result of being struck by a van a year earlier. In addition, Aaron wore a partial cast on his right foot because he had dropped weights on his toe earlier that spring.

{¶ 4} Gumm, who knew Aaron, approached the boy and offered him $10 to help him and Bies remove scrap metal from an abandoned building near the park.

{¶ 5} After Aaron accepted Gumm's offer, Bies, Gumm and Aaron entered one abandoned building and crossed over a walkway into a second abandoned building. At this point, Aaron began to resist. Once inside this second building, Gumm attempted to have intercourse with Aaron, but Aaron screamed and resisted. When Aaron refused, Gumm struck him. Aaron began to cry. Bies admitted

striking Aaron with a wooden board across the chest or head. Gumm then carried Aaron down into the basement of that building.

{¶ 6} The beating continued in the basement. Bies further admitted he hit Aaron with a pipe three or four times, and with a piece of concrete, two or three times. Aaron was also kicked with such force as to leave the imprint of shoe tread patterns on his body.

{¶ 7} Bies and Gumm left Aaron in the basement. They returned to the first building and performed oral sex on one another. They then left the area and went their separate ways.

{¶ 8} When Aaron did not return home that evening, his nineteen-year-old brother became concerned and began to look for him. When Aaron's mother came home from work that night, she phoned the police to report him missing. The police searched the surrounding area, but left the search of the abandoned buildings until morning because of their dilapidated condition.

{¶ 9} When police discovered Aaron's body the next morning, several objects were located around the body, including a rock, a metal pipe, some rope and pieces of wood. Human hairs found on these objects were consistent with the hair sample taken from Aaron's head. Blood stains found on the pipe and piece of concrete were also consistent with Aaron's blood type.

{¶ 10} The autopsy revealed that Aaron had sustained nineteen separate scalp lacerations, representing distinct injuries or impacts, and that there were so many tears of the scalp that they had become almost one wound. The wounds on the back of his head were consistent with injuries that would be left by the threads of a metal pipe. The entire left side of Aaron's face had been flattened by severe skull fractures caused by a very heavy and broad implement, such as a brick, a chunk of concrete, or a rock. Bleeding of the muscle tissue around Aaron's windpipe was observed, indicating pressure had been exerted around the neck by some sort of ligature, like a piece of twine.

**{¶ 11}** Other injuries sustained by Aaron included five broken ribs, four of which punctured his right lung, a broken jaw, chipped teeth, a pattern injury on the back caused by some sort of long thin object like a tube or a stick, and scrapes on the back of the right leg consistent with drag marks. There was no evidence of any defensive wounds. Cause of death was multiple blunt injuries to Aaron's head, neck, chest and abdomen.

**{¶ 12}** Police arrested Gumm and questioned him about his involvement in the murder. After talking to Gumm, the police went to Hazard, Kentucky, to question Bies.

**{¶ 13}** Bies gave several statements to the police, two of which were tape-recorded. Initially, he denied any involvement in the murder. However, once the police presented him with information they already had, Bies admitted that he was with Gumm that day, but essentially stated that Gumm was responsible for what had occurred.

**{¶ 14}** As a result of his statements, the police arrested Bies and transported him to Cincinnati. Bies offered to return to the crime scene to refresh his memory of the events in order to assist the police in solving the case. As they walked through the buildings and the surrounding area, Bies offered detailed statements regarding the instruments used to kill Aaron, including that the pipe had threading around the top and that the weapons used to kill Aaron were similar in weight to other objects lying around the building.

**{¶ 15}** When they returned to the police station, the officers told Bies that they knew he was lying because of the detailed comments he had given at the crime scene. Bies then gave his last statement, which was unrecorded per his request, admitting to his involvement in Aaron's death.

**{¶ 16}** Bies was indicted on one count of aggravated murder, R.C. 2903.01, with three death penalty specifications: one under R.C. 2929.04(A)(3) (offense committed to escape detection for attempted rape or kidnapping) and two under

3

R.C. 2929.04(A)(7) (felony-murder based on underlying felonies of kidnapping and attempted rape). Bies was also indicted on the separate charges of attempted rape (R.C. 2907.02 and 2923.02) and kidnapping (R.C. 2905.01). At the conclusion of the guilt phase, the jury found Bies guilty on all counts and specifications.

{¶ 17} At his sentencing hearing, Bies made an unsworn statement. A letter Bies had composed for the purpose of his statement was read by his attorney when Bies had trouble reading it. In the letter, Bies stated that this was the first time he had ever been in court, and asked for mercy and a life sentence. Bies also called Dr. Donna E. Winter, a clinical psychologist, to testify on his behalf.

{¶ 18} Winter reviewed an evaluation made of Bies when he was three years old, in which he was characterized as being "violent and uncontrollable." Hospital records of Bies indicated that he was abused during his childhood, and that his upbringing was chaotic, neglectful and violent. Between the ages of five and thirteen, Bies had made several suicide attempts or threats. Bies was too disruptive for public school, so he was placed in several different special schools. Winter believed that Bies is still a very impulsive person, who at times cannot control his anger and becomes hostile. Winter evaluated Bies's I.Q. as being in the range of mildly to borderline mentally retarded. Although Winter described Bies as a "very dense individual" lacking common sense, she conceded that everyone who evaluated Bies, including herself, concluded that Bies knew right from wrong at the time of the murder.

{¶ 19} The jury recommended the death penalty, and the trial court imposed a capital sentence. The court also imposed consecutive terms of imprisonment for the attempted rape and kidnapping.

{¶ 20} Upon appeal, the First District Court of Appeals affirmed the convictions and sentence of death.

{¶ 21} This cause is now before this court upon an appeal as of right.

————————————

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *William E. Breyer*, Assistant Prosecuting Attorney, for appellee.

*Deardorff & Haas, Timothy J. Deardorff* and *Loren S. Haas*, for appellant.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 22} Appellant raises twenty-four propositions of law for our review. (See Appendix.) Many of these propositions either have not been preserved or have already been rejected in prior case law. Pursuant to R.C. 2929.05, we will not address and discuss, in opinion form, each proposition of law. See, *e.g., State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568, syllabus; *State v. Scudder* (1994), 71 Ohio St.3d 263, 643 N.E.2d 524; *State v. Simko* (1994), 71 Ohio St.3d 483, 644 N.E.2d 345. However, we have fully reviewed the record and passed upon each proposition prior to reaching our decision. We have also independently assessed the evidence relating to the death sentence, balanced the aggravating circumstances against the mitigating factors, and reviewed the proportionality of the sentence to sentences imposed in similar cases. As a result, we affirm appellant's convictions and death sentence.

PRETRIAL MOTIONS

*Motion to Suppress (XVI)*

{¶ 23} In Proposition of Law XVI, Bies argues that the trial court erred in overruling his motion to suppress his statements made to police officers. Bies contends that he lacked the mental capacity to waive his *Miranda* rights, and that under the totality of the circumstances, his confession was involuntary.

{¶ 24} A review of the officers' testimony and the taped statements of Bies reveals that he was advised of and waived his *Miranda* rights before each interview with the police. Moreover, at no time during the motion to suppress hearing did defense counsel attempt to establish that Bies lacked the mental capacity to voluntarily waive his *Miranda* rights. As noted in *State v. Hill* (1992), 64 Ohio

St.3d 313, 318, 595 N.E.2d 884, 890, while the state must prove voluntariness by a preponderance of the evidence, a low mental aptitude of the interrogee is not enough by itself to show police overreaching. Following *Colorado v. Connelly* (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473, this court recognized that evidence of police coercion or overreaching is necessary for a finding of involuntariness. *Hill, supra.* None of the interviews of Bies indicates police coercion, threats, mistreatment or physical deprivation. The questioning of Bies was neither prolonged nor intense. Under the totality of circumstances test of *State v. Smith* (1991), 61 Ohio St.3d 284, 288, 574 N.E.2d 510, 515, the trial court did not err in overruling Bies's motion to suppress.

{¶ 25} Accordingly, Proposition of Law XVI is rejected.

*Change of Venue (XVII)*

{¶ 26} In Proposition of Law XVII, Bies contends that the trial court erred in overruling his motion for change of venue based on pretrial publicity. Bies asserts that the voir dire record amply indicates that most prospective jurors had some familiarity with the murder of Aaron Raines.

{¶ 27} In reviewing a ruling on a change of venue motion, the crucial issue is whether the trial court's refusal to change venue violated the defendant's fair trial rights. *State v. Lundgren* (1995), 73 Ohio St.3d 474, 479, 653 N.E.2d 304, 313. However, the denial of a motion for a change of venue will not be disturbed absent a clear showing of an abuse of discretion by the trial court. *State v. Maurer* (1984), 15 Ohio St.3d 239, 250, 15 OBR 379, 388-389, 473 N.E.2d 768, 780.

{¶ 28} A review of the voir dire indicates that most prospective jurors had been exposed to pretrial publicity about the murder. Of those jurors who had heard of the crime, however, most remembered very little and all stated that they would judge Bies solely on the law and evidence presented at trial. Thus, the examination of the jurors during voir dire afforded the best indication that prejudice toward Bies did not exist in the community. See *State v. Fox* (1994), 69 Ohio St.3d 183, 189,

6

631 N.E.2d 124, 130. There was no reasonable likelihood of prejudice arising out of the pretrial publicity in this case. *State v. Fairbanks* (1972), 32 Ohio St.2d 34, 61 O.O.2d 241, 289 N.E.2d 352, paragraph one of the syllabus.

{¶ 29} Since Bies's right to a fair trial was not violated, he cannot show that the trial court abused its discretion in rejecting his motion for a change of venue. We overrule this proposition of law.

## GUILT PHASE

*Sufficiency of the Evidence (XXI, XXII)*

{¶ 30} In Propositions of Law XXI and XXII, Bies claims the trial court erred in denying his Crim.R. 29 motions because his convictions for attempted rape and kidnapping were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 31} When a defendant challenges the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis *sic*.) *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573; *State v. Campbell* (1994), 69 Ohio St.3d 38, 46, 630 N.E.2d 339, 348.

{¶ 32} In light of the testimony at trial, we find these propositions to be meritless. Bies admitted to the police officers who took his statements that both he and Gumm wanted to engage in sexual acts with Aaron, and that is why they lured the boy into the abandoned buildings. Bies further admitted that Gumm attempted intercourse with Aaron, but Aaron screamed and resisted. As pointed out by the court of appeals below, Bies was at least a complicitor to both offenses and, under R.C. 2923.03(F), a complicitor "shall be prosecuted and punished as if he were a principal offender." As to Bies's complaint about the manifest weight of the evidence, a thorough review of the record convinces us that his guilt was established beyond a reasonable doubt.

**{¶ 33}** Accordingly, Propositions of Law XXI and XXII are not well taken.

PENALTY PHASE

*Sentencing Opinion (VI)*

**{¶ 34}** In Proposition of Law VI, Bies asserts that in its sentencing opinion, the trial court considered the nature and circumstances of the offense as nonstatutory aggravating circumstances. In addition, Bies contends that the trial court gave insufficient consideration to valid mitigating factors, and that it considered the nonexistence of some statutory mitigating factors as nonstatutory aggravating circumstances. In particular, Bies points to the trial court's review of the "catch-all" mitigating factor of R.C. 2929.04(B)(7), where the court stated:

"The defendant's background is sad, but is not sufficient mitigation. Far more persuasive were the innocence of the victim and the brutality of the crime."

**{¶ 35}** While a court cannot consider the nature and circumstances of an offense as a nonstatutory aggravating circumstance, *State v. Lott* (1990), 51 Ohio St.3d 160, 171, 555 N.E.2d 293, 304, a review of the sentencing opinion does not support Bies's assertion. Here, the trial court relied upon and cited the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances outweighed the mitigating factors. See *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus.

**{¶ 36}** However, even if any of Bies's complaints are valid, our independent review will cure any errors or omissions. See, *e.g., Lott, supra*, 51 Ohio St.3d at 170, 555 N.E.2d at 304. Therefore, Proposition of Law VI is rejected.

*Consecutive Sentencing (VIII)*

**{¶ 37}** In Proposition of Law VIII, Bies submits that a trial court cannot legally impose a term of imprisonment to be served consecutively to a death sentence. Notwithstanding the fact that this issue is waived for failing to raise it below, this court rejected the same argument in *Campbell, supra,* 69 Ohio St.3d at 52, 630 N.E.2d at 352. There, this court found that the prison sentence was rendered

moot by the imposition of the death sentence. Accordingly, Proposition of Law VIII is overruled.

*Prosecutorial Misconduct (XI)*

**{¶ 38}** In Proposition of Law XI, Bies argues that the cumulative effect of instances of prosecutorial misconduct during closing argument at the penalty phase caused the jury to impose a harsher sentence than it might have otherwise imposed.

**{¶ 39}** Bies complains first that the prosecutor, over defense objection, improperly appealed to the jurors' sense of morality when he commented that Bies's mother did not testify during the mitigation hearing. However, prosecutorial comment pertaining to the fact that a witness, other than the accused, did not testify, is not improper. See *State v. Williams* (1986), 23 Ohio St.3d 16, 20, 23 OBR 13, 17, 490 N.E.2d 906, 911; *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193, 616 N.E.2d 909, 916.

**{¶ 40}** Bies further asserts prosecutorial misconduct with respect to the following comments:

"He [Bies] was disrupting class as early as kindergarten. He was expelled from public schools and placed in therapeutic schools which deal with severe behavior problems."

"*** [W]ith respect to everyone involved in the arguments in this case, I would submit that tears of sympathy are very much misdirected here. They are very much misdirected."

"I submit to you, ladies and gentlemen, that Michael Bies is a parent's worst nightmare."

"You've seen the pictures. What happens to a little 10 year old 85 pound 4-1/2 foot boy with a cast on his foot? You saw what happened to him when he doesn't comply with what Michael Bies wants him to do.

"He takes a pipe to his head, trying to force him to do this. He breaks his jaw. He breaks his teeth."

{¶ 41} None of the foregoing comments was objected to and, thus, all but plain error is waived. *State v. Johnson* (1989), 46 Ohio St.3d 96, 103, 545 N.E.2d 636, 643. These comments were not abusive, but fit within the creative latitude permitted both parties during closing argument. *State v. Brown* (1988), 38 Ohio St.3d 305, 317, 528 N.E.2d 523, 538. Even assuming that these comments were improper, they did not prejudicially affect the substantial rights of defendant. *State v. Smith* (1984), 14 Ohio St.3d 13, 14 OBR 317, 570 N.E.2d 883. Nothing suggests that "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus. Accordingly, Proposition of Law XI is overruled.

INDEPENDENT ASSESSMENT OF SENTENCE

{¶ 42} Pursuant to our duties imposed by R.C. 2929.05(A), we now independently review the death penalty sentence for appropriateness and proportionality.

{¶ 43} The evidence establishes, beyond a reasonable doubt, that Bies committed the aggravating circumstances of murdering Aaron Raines for the purpose of escaping detection, apprehension and trial for other offenses, *i.e.,* attempted rape and kidnapping, and that during these offenses, Bies was either the principal offender in the aggravated murder or he committed it with prior calculation and design. R.C. 2929.04(A)(3) and (7).

{¶ 44} As to possible mitigating factors, nothing in the nature and circumstances of the offense appears mitigating. Bies accompanied Gumm when Gumm lured ten-year-old Aaron Raines into the abandoned buildings under the ruse that he would pay Aaron for help in stripping scrap metal from the buildings. Bies told police that both he and Gumm went into the buildings in order to engage in sexual acts with Aaron. When Aaron refused Gumm's advances, Bies hit Aaron with a board. Aaron was carried to the basement of the second building, where Bies and Gumm brutalized him with an assortment of weapons. Bies admitted to

police his participation in the murder after first claiming to be a mere bystander. After severely beating Aaron, the men left Aaron to die.

{¶ 45} Bies's history and background provide some mitigating features. Dr. Winter testified that Bies was born to a teenage mother in an environment of neglect and abuse. Bies's father was an alcoholic who physically abused Bies's mother before he abandoned the family. At the age of nearly four, Bies underwent a complete medical and psychological evaluation, since he was diagnosed as "violent and uncontrollable." Throughout his childhood, Bies endured several medical and psychiatric hospitalizations, some of which were attributable to suicide attempts. Bies was expelled from public school because of his disruptive behavior, and was thereafter placed in a therapeutic school for a severe behavior handicap. The psychiatric diagnoses for Bies included attention deficit/hyperactivity disorder, adjustment disorder with depression, and adjustment disorder with mixed disturbance of emotions and conduct. Winter found that Bies was mildly to borderline mentally retarded, and suffering from a borderline personality disorder. Overall, Winter characterized Bies as "a very dense individual." Nevertheless, Winter found that Bies knew right from wrong at the time of the murder.

{¶ 46} With respect to the relevant mitigating factors in R.C. 2929.04(B), factor (4), youth of the offender, is entitled to appropriate weight since Bies was twenty years old at the time of the offense. However, this court seldom accords such factor great weight in mitigation. See *Hill, supra,* 64 Ohio St.3d at 335, 595 N.E.2d at 901.

{¶ 47} In spite of a pending charge from Indiana of receiving stolen property at the time of his arrest, Bies's lack of a significant criminal record (factor 5) is entitled to some weight. See *State v. Brewer* (1990), 48 Ohio St.3d 50, 64, 549 N.E.2d 491, 505. Under factor (7), Bies's personality disorder and mild to borderline mental retardation merit some weight in mitigation. See *State v. Davis* (1992), 63 Ohio St.3d 44, 51, 584 N.E.2d 1192, 1198. However, they do not rise

to the level of a "mental disease or defect" under R.C. 2929.04(B)(3). See *State v. Seiber* (1990), 56 Ohio St.3d 4, 9, 564 N.E.2d 408, 415. In addition, Bies's violent and unstable family environment is entitled to some, but very little, weight in mitigation. *State v. Montgomery* (1991), 61 Ohio St.3d 410, 419, 575 N.E.2d 167, 174. None of the other statutory mitigating factors is relevant.

**{¶ 48}** Upon independent weighing, the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. The totality of evidence and circumstances portray a heinous and brutal crime that shocks the senses. A small ten-year-old boy who was afraid of the dark and who had problems walking was tricked into going into two abandoned buildings to earn some money. Once inside, Bies and Gumm made Aaron aware of their sexual intentions and Aaron resisted. But he was not allowed to leave. This clearly constituted kidnapping under R.C. 2905.01. Aaron was then dragged over to another building against his will where the attempted rape took place. After Aaron refused to accede to the sexual desires of his abductors, he was brutally murdered. Bies's participation in these crimes merits the capital penalty to which he was sentenced.

**{¶ 49}** The death penalty imposed in this case is both appropriate and proportionate when compared with similar capital cases where murder was combined with kidnapping. See *Fox, supra*, 69 Ohio St.3d 183, 631 N.E.2d 124; *State v. Joseph* (1995), 73 Ohio St.3d 450, 653 N.E.2d 285; and *State v. Spirko* (1991), 59 Ohio St.3d 1, 570 N.E.2d 229. The penalty is also appropriate and proportionate when compared with capital cases combining murder and attempted rape. See *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237; and *State v. Scudder, supra,* 71 Ohio St.3d 263, 643 N.E.2d 524. Moreover, the penalty is appropriate and proportionate when compared to the capital case of Bies's accomplice. See *State v. Gumm* (1995), 73 Ohio St.3d 413, 653 N.E.2d 253.

**{¶ 50}** Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, PFEIFER and COOK, JJ., concur.

_____

APPENDIX

{¶ 51} "Proposition of Law I[:]   Appellant was deprived of his rights of due process, to a fair trial and against cruel and unusual punishment under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution, the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, and the Eighth Amendment and Article I, Section 9 of the Ohio Constitution, respectively, when the trial court refused to instruct the jury on the lesser included offense of involuntary manslaughter.

{¶ 52} "Proposition of Law II[:]   In an aggravated murder case, the state must prove that the defendant specifically intended to cause the death of another. Jury instructions on causation which state that the defendant need not foresee a particular injury to a specific person and that the defendant is responsible for causing any foreseeable result which flows from an unlawful event are incompatible with the specific intent to cause the death of another which is required for aggravated murder.  Such instructions relieve the state of its burden of proof on this essential element and violate the Eighth and Fourteenth Amendments to the United States Constitution.

{¶ 53} "Proposition of Law III[:]   Expert scientific testimony should not be admitted if it is not relevant, does not assist the trier of fact and has a minimal probative value which is substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury.  *State v. Williams*, 4 Ohio St.3d 53 [4 OBR 144, 446 N.E.2d 444] (1983), followed.

{¶ 54} Proposition of Law IV[:]   Needlessly cumulative evidence should not be admitted.  Allowing the prosecution to play two tape recordings and then allowing the state to provide the jury with transcripts of the two exhibits, both

during testimony and in the jury room, is unduly repetitive and unfairly emphasizes the contents of the recordings.

{¶ 55} "Proposition of Law V[:]   A capital defendant is denied his Sixth, Eighth, and Fourteenth Amendment rights to a fair trial, due process and a reliable determination of his guilt and sentence when gruesome, prejudicial and cumulative photographs are admitted into evidence even though their prejudicial effect outweighs their probative value.

{¶ 56} "Proposition of Law VI[:]   A trial court commits prejudicial error by basing its decision to impose the death sentence upon the nonstatutory aggravating factor of the nature and circumstances of the offense, by giving insufficient consideration to valid mitigating factors, and by considering the nonexistence of some statutory mitigating factors as nonstatutory aggravating factors.  These violated appellant Michael Bies' constitutional right to reliability in the imposition of a death sentence upon him.

{¶ 57} "Proposition of Law VII[:]   Penalty phase jury instructions which relieve the state of its burden of proof and which effectively mandate a death verdict offend the Eighth and Fourteenth Amendments and require reversal of the death sentence.

{¶ 58} "Proposition of Law VIII[:]   Pursuant to R.C. 2929.41 a term of imprisonment can be made consecutive only to another term of imprisonment.  A death sentence is not a term of imprisonment.  Therefore, a [trial] court cannot legally impose a term of imprisonment to be served consecutively to a sentence of death.

{¶ 59} "Proposition of Law IX[:]   Appellant Bies' right to an impartial jury under the Sixth Amendment to the United States Constitution and Article I, Section 5 of the Ohio Constitution and to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio

Constitution, were violated because the trial court abused its discretion when it refused to grant appellant's motion for individual sequestered voir dire.

{¶ 60} "Proposition of Law X[:]   The prosecution exceeds proper bounds for voir dire in a capital case when it obtains [jurors'] personal commitment to a death verdict in the particular case before them, creates a presumption in favor of a death sentence and diminishes [jurors'] sense of responsibility for a death verdict.

{¶ 61} "Proposition of Law XI[:]    A trial court may not allow the prosecutor to appeal [to] the passions and prejudices of the jury at the penalty phase of the trial.   This violates the accused's rights under the Sixth and Fourteenth Amendments to the United States Constitution and his concomitant rights under Article I, Section 10 of the Ohio Constitution.

{¶ 62} "Proposition of Law XII[:]   The trial court's instructions to the jury on the definition of reasonable doubt allowed the jurors to return convictions based on a degree of proof below that required by the Due Process Clause of the Fourteenth Amendment.

{¶ 63} "Proposition of Law XIII[:]   The Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution establish the requirements for a valid death penalty scheme.   Ohio Revised Code, Section[s] 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04 and 2929.05, Ohio's statutory provisions governing the imposition of the death penalty, do not meet the prescribed constitutional requirements and are unconstitutional, both on their face and as applied to appellant Michael Bies.

{¶ 64} "Proposition of Law XIV[:]   The trial court's instructions to the jury that its sentencing verdict was only a recommendation diminished the jury's responsibility for its verdict and rendered appellant Bies' death sentence unreliable in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United

States Constitution and Article I, Sections 2, 5, 9, 10, and 16 of the Ohio Constitution.

{¶ 65} "Proposition of Law XV[:]   A trial court commits plain error by submitting to the jury a verdict form as [*sic*, at] the sentencing phase stating that the verdict of the jury was merely a 'recommendation.'

{¶ 66} "Proposition of Law XVI[:]   A trial court errs to the prejudice of the appellant in overruling the motion to suppress from evidence statements allegedly made by appellant after he was taken into custody and before he was provided with the advice, assistance, and representation of counsel, which statements were used as evidence in chief against the appellant at his trial in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under the Constitution of Ohio, Article I, Section 10.

{¶ 67} "Proposition of Law XVII[:]   A trial court errs denying appellant's motion for a change of venue when there is a reasonable likelihood that prejudicial news prior to trial will prevent a new [*sic*, fair?] trial.

{¶ 68} "Proposition of Law XVIII[:]   A trial court may not impose the death sentence when the jury which convicted the appellant and recommended the death sentence was improperly constituted in violation of the appellant's right to a fair and impartial jury under the Sixth and Fourteenth Amendments to the Constitution of the United States, and under the Bill of Rights of the Ohio Constitution, in addition to constituting a violation of Ohio statutory law.

{¶ 69} "Proposition of Law XIX[:]   The trial court erred in overruling the appellant's motion to prohibit death qualification of the jury, which resulted in a jury that did not represent a fair cross-section of the community.

{¶ 70} "Proposition of Law XX[:]   It is reversible error for the trial court to instruct the jury that a defendant's purpose to kill can be presumed from the use of a weapon.  That presumption relieves the state of its burden of proof as to an essential element of the crime charged in violation of the Due Process Clause of the

Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

{¶ 71} "Proposition of Law XXI[:]   A trial court errs to the substantial prejudice of appellant Bies and in violation of his rights to due process of law under the United States and Ohio Constitutions by denying appellant's Rule 29 motions, and by entering judgments of conviction on the counts of attempted rape and kidnapping, for the reason that there was insufficient evidence produced to support convictions for those offenses.

{¶ 72} "Proposition of Law XXII[:]    The judgments of conviction for attempted rape and kidnapping are contrary to the manifest weight of the evidence.

{¶ 73} "Proposition of Law XXIII[:]   The judgment of the trial court, as well as the jury, that the aggravating factors of which appellant was convicted outweighed the mitigating factors presented by the defense is contrary to the manifest weight of the evidence and to the constitutional right to due process of law, and to be free from cruel and unusual punishment under the Eight[h] Amendment and Article I, Section 9 of the Ohio Constitution.

{¶ 74} "Proposition of Law XXIV[:]   The Fifth, Eighth and Fourteenth Amendments to the United States Constitution, Sections 10 and 16, Article I of the Ohio Constitution and Ohio Revised Code, Section 2929.05 guarantee a convicted capital defendant a fair and impartial review of his death sentence.  The statutorily mandated proportionality process being employed in Ohio does not comport with this constitutional requirement and thus is fatally flawed."