# United States Court of Appeals
## For the First Circuit

No. 16-1727

GARY LEE SAMPSON,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

PETITION FOR A WRIT OF MANDAMUS TO AND APPEAL FROM THE UNITED
STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Lynch, Selya, and Lipez,
Circuit Judges.

Paul Mogin, with whom William E. McDaniels, Jennifer G. Wicht,
Williams & Connolly LLP, Michael Burt, Law Office of Michael Burt,
Danalynn Recer, and Gulf Region Advocacy Center were on brief, for
appellant.
Mark T. Quinlivan, Assistant U.S. Attorney, with whom Carmen
M. Ortiz, United States Attorney, was on brief, for appellee.

August 4, 2016

**LYNCH**, **Circuit Judge**.  Gary Lee Sampson pled guilty in September 2003 to two counts of the crime of carjacking resulting in death.  In December 2003, following a penalty-phase trial, a jury sentenced Sampson to death under the Federal Death Penalty Act ("FDPA") for those crimes.  See 18 U.S.C. §§ 3591-3599.  His death sentence was later vacated due to jury taint, and his case returned to the district court for further proceedings.  The government filed an amended notice that it sought the death penalty.  That notice listed the factors that in its view justified the death penalty, largely tracking the original notice.  Sampson challenged several aspects of that notice.

Sampson now both petitions for a writ of mandamus, and appeals from an order by the district court denying his motion in limine to dismiss or strike two non-statutory aggravating factors the prosecution intends to present in a second penalty-phase proceeding under the FDPA.[1]  Those factors, which were also included in the original notice, are: (1) future dangerousness, and (2) obstruction of justice by means of murder to conceal the theft and attempted theft of victims' automobiles.  The new penalty-phase trial is scheduled to start on September 14, 2016. We have expedited this appeal.

---

[1]  The term "appeal" hereinafter refers to Sampson's arguments before this court generally, including his arguments for granting mandamus and his arguments on the merits.

Sampson argues that because the jury in his first penalty-phase proceeding did not find unanimously that the government proved these two non-statutory aggravating factors beyond a reasonable doubt, their introduction at the new penalty-phase proceeding is barred by the Double Jeopardy Clause of the Constitution, including its collateral-estoppel component. Under Supreme Court precedent, Sampson's claims must be rejected. We affirm the district court's order.

I.

The facts of the case are familiar from earlier opinions, and we recite only those relevant to this appeal. See United States v. Sampson (Sampson I), 486 F.3d 13 (1st Cir. 2007); United States v. Sampson (Sampson II), 820 F. Supp. 2d 151 (D. Mass. 2011); United States v. Sampson (Sampson III), 820 F. Supp. 2d 202 (D. Mass. 2011); United States v. Sampson (Sampson IV), 58 F. Supp. 3d 136 (D. Mass. 2012); Sampson v. United States (Sampson V), 724 F.3d 150 (1st Cir. 2013).[2]

Sampson murdered three people over the course of a week in 2001. He murdered Philip McCloskey in Massachusetts on July 24, 2001, and attempted to steal McCloskey's car; murdered Jonathan

_____

[2] This reproduces the sequence and labeling of Sampson decisions in Sampson V, 724 F.3d at 154, and adds Sampson V to that sequence.

- 3 -

Rizzo in Massachusetts and stole Rizzo's car on July 27; and murdered Robert Whitney in New Hampshire on July 30.

On August 8, 2002, a grand jury, in a second superseding indictment, indicted Sampson on two counts of carjacking resulting in death. The government then filed a notice of intent to seek the death penalty, as required by the FDPA. See 18 U.S.C. § 3593(a).

Under the FDPA, after the government has filed a notice of intent to seek the death penalty, the criminal trial divides into two phases, one focused on guilt (the "guilt phase") and the other on sentencing (the "penalty phase"). See id. § 3593(b). If the defendant is convicted of a predicate capital offense in the guilt phase, the government then must prove beyond a reasonable doubt in the penalty phase that the defendant was at least 18 years old, committed one of four acts with the requisite mental state,[3] and committed at least one of sixteen statutory aggravating factors. Id. §§ 3591(a), 3592(c), 3593(c)-(d).

If the government satisfies these prerequisites and proves that the defendant is eligible for death, the jury must decide whether death is justified by weighing any proven mitigating factors with the proven aggravating factors, including both statutory and non-statutory aggravating factors. Id. § 3593(e).

---

[3] Alternatively, the government may prove that the defendant engaged in espionage or treason. See id. § 3591(a)(1).

- 4 -

"The term 'non-statutory aggravating factor' is used to 'refer to any aggravating factor that is not specifically described in 18 U.S.C. § 3592.'" Sampson I, 486 F.3d at 44 n.14 (quoting Jones v. United States, 527 U.S. 373, 378 n.2 (1999)). The jury must submit special findings on any aggravating factors, 18 U.S.C. § 3593(d), and must find unanimously that the government has proven any aggravating factors, statutory or non-statutory, beyond a reasonable doubt, id. § 3593(c)-(d).

Sampson pled guilty to both charges of carjacking resulting in death. The first penalty-phase hearing followed. At the close of the penalty phase, the jury found unanimously for the death penalty. For each count, the jury submitted a special verdict form that contained separate findings on each alleged statutory and non-statutory aggravating factor. The jury's special verdict form stated that it found unanimously that the government had proven two statutory aggravating factors and a number of non-statutory aggravating factors for each charge against Sampson.

Pertinent to this appeal, the jury did not find unanimously that the government had proven beyond a reasonable doubt two alleged non-statutory aggravating factors, future dangerousness and murder to obstruct justice, for either charge.[4]

---

[4] Specifically, for both Count 1 ("Carjacking Resulting in the Death of Philip McCloskey") and Count 2 ("Carjacking Resulting

That is, the unanimity requirement had not been met as to those two factors. It is from this circumstance that Sampson constructs his argument in this appeal.

After being sentenced to death, Sampson appealed, and this panel affirmed. Sampson I, 486 F.3d at 52. Rehearing en banc was denied. United States v. Sampson, 497 F.3d 55, 56 (1st Cir. 2007).

In 2009, Sampson petitioned for a new trial under 28 U.S.C. § 2255. The district court, finding that a juror had lied during the voir dire process in answering questions about her ability to be impartial, Sampson II, 820 F. Supp. 2d at 192-97, vacated Sampson's sentence, id. at 202. The government appealed,

_____

in the Death of Jonathan Rizzo"), the jury checked "1 or More Jurors Say No" on the special verdict form in response to the following two non-statutory aggravating factors (represented here by the Count 1 factors):

> Do each and every one of you find that the government has proven, beyond a reasonable doubt, that the defendant, Gary Sampson, murdered Philip McCloskey for the sole or primary purpose of preventing him from reporting the attempted theft of his automobile to authorities?

> Do each and every one of you find that the government has proven, beyond a reasonable doubt, that the defendant, Gary Sampson, is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of prison officials and inmates as demonstrated by his history of prison misconduct?

and we took jurisdiction and affirmed on the basis of juror misconduct. Sampson V, 724 F.3d at 170.

We further held that the juror's lies during voir dire concealed significant evidence of bias that would have provided grounds to excuse her for cause. Id. at 168. We held that Sampson "was deprived of the right to an impartial jury and is entitled to a new penalty-phase hearing." Id. The case returned to the district court for further proceedings in 2013.

In March 2014, the government filed an amended notice of intent to seek the death penalty. The amended notice again alleged for both counts of Sampson's conviction, inter alia, the two non-statutory aggravating factors -- that (1) Sampson is "likely to commit criminal acts of violence in the future" and pose a danger to prison officials and inmates ("future dangerousness"); and (2) that Sampson murdered Philip McCloskey and Jonathan Rizzo "to prevent [the victims] from reporting the carjacking[s] to authorities" ("murder to obstruct justice") -- which the original sentencing jury found that the government failed to prove beyond a reasonable doubt to the satisfaction of all jurors. The amended notice also stated that the government would use new evidence from Sampson's conduct in prison from 2004 to the present in order to prove future dangerousness.

On May 15, 2015, Sampson moved to dismiss or strike a number of the statutory and non-statutory aggravating factors from

the amended notice.  He was partially successful.  As to the issues on appeal, Sampson argued that the renewed allegations of the non-statutory aggravating factors of future dangerousness and obstruction of justice violated the Double Jeopardy Clause's retrial and collateral-estoppel components.  The government opposed the motion.

The district court denied the motion to dismiss or strike the two non-statutory aggravating factors.  It held that the Double Jeopardy Clause does not preclude alleging the non-statutory factors at the new penalty-phase hearing because the original penalty-phase jury's findings on those factors did not constitute an "acquittal."  And it held that the factors are not barred by the collateral-estoppel component of the Double Jeopardy Clause, because "the jury verdict was tainted by a juror who lied about her ability to be impartial," and because the jury's rejection of the factors was "not essential to the judgment of death."

Sampson then moved for a certificate of appealability under 28 U.S.C. § 2253(c).  The district court, citing Abney v. United States, 431 U.S. 651, 662, 659 (1977), reasoned that its rejection of Sampson's motion to dismiss or strike the two non-statutory aggravating factors was a "pretrial order[] rejecting [a] claim[] of former jeopardy," and so was one of the "small class of cases that [are] beyond the confines of the final-judgment rule."  The district court granted Sampson's motion and issued a

certificate of appealability on the following question: "Whether the Double Jeopardy Clause bars the government, at Sampson's new penalty phase hearing, from seeking to prove two non-statutory aggravating factors which the jury at Sampson's first penalty phase hearing found had not been proven beyond a reasonable doubt." Sampson then filed this timely appeal.

## II.

### Appellate Jurisdiction

Before reaching the merits of Sampson's appeal, we must satisfy ourselves that we have jurisdiction to hear it. The government disputes that we have jurisdiction, but argues that we may skip that analysis in favor of a merits analysis. Sampson argues, among other things, that we should exercise the mandamus power available to us under the All Writs Act, 28 U.S.C. § 1651(a). We conclude that, whether or not we have statutory jurisdiction, we at least have and will exercise advisory mandamus jurisdiction.

The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Id. "[M]andamus must be used sparingly and only in extraordinary situations." In re Pearson, 990 F.2d 653, 656 (1st Cir. 1993). There are two types of mandamus, supervisory and advisory. United States v. Horn, 29 F.3d 754, 769 n.19 (1st Cir. 1994). "The former is used when an appellate court

- 9 -

issues the writ to correct an established trial court practice that significantly distorts proper procedure," id., whereas the latter is used in "cases . . . that present novel questions of great significance which, if not immediately addressed, are likely to recur and to evade effective review," United States v. Green, 407 F.3d 434, 439 (1st Cir. 2005). "We typically exercise [advisory mandamus] to settle substantial questions of law when doing so would give needed guidance to lawyers, litigants, and lower courts." Sampson V, 724 F.3d at 159.

We exercised advisory mandamus jurisdiction in the prior appeal to address the juror misconduct issue. Id. at 159-61. It is appropriate to exercise advisory mandamus here. Sampson's appeal meets all of the stringent requirements for its "strong medicine." In re Sony BMG Music Entm't, 564 F.3d 1, 4 (1st Cir. 2009).

First, the issue, as framed, is novel.[5] As Sampson notes, neither this court nor the Supreme Court has passed on the

---

[5]   See In re Justices of Superior Court Dep't of Mass. Trial Ct., 218 F.3d 11, 16 (1st Cir. 2000) (advisory mandamus appropriate because the "availability of pretrial federal habeas relief for 'disinterested prosecutor' claims [was] an issue of first impression" implicating "greater issues of federalism"); Horn, 29 F.3d at 770 (advisory mandamus appropriate for the question of whether sovereign immunity bars federal court's order of attorneys' fees and costs against government in criminal case because "[t]he issue presented ha[d] never before been squarely decided"); In re Globe Newspaper Co., 920 F.2d 88, 90 (1st Cir. 1990) (advisory mandamus warranted to decide "novel and important" question of press access to jury list (quoting In re Globe

- 10 -

precise type of double-jeopardy challenge presented in this appeal. Second, it is of high public importance. "Like the right to trial by jury, [the guarantee against double jeopardy] is clearly 'fundamental to the American scheme of justice.'" Benton v. Maryland, 395 U.S. 784, 796 (1969) (quoting Duncan v. Louisiana, 391 U.S. 145, 149 (1968)). Third, as we emphasized when we exercised advisory mandamus to affirm the district court's vacatur of Sampson's sentence for jury taint, an already significant legal question is even more so in the context of a capital case, because "death is [] different." Sampson V, 724 F.3d at 159 (alteration in original) (quoting Gardner v. Florida, 430 U.S. 349, 357 (1977) (plurality opinion)). Fourth, exercising review now offers pragmatic benefits in this case. As Sampson notes, and as the district court observed, deferring review of the district court's rejection of his double-jeopardy challenge presents risks of a third penalty trial. Incurring the pain inflicted by a third trial is to be avoided, if not needed.

The government essentially concedes that the appeal raises novel questions of public importance, that exercising mandamus would offer significant pragmatic benefits, and that it "undoubtedly would provide needed guidance to the district court, the lawyers, and litigants in this case." The government rests

_____

Newspaper Co., 729 F.2d 47, 50 (1st Cir. 1984))).

its argument against advisory mandamus instead on an assertion that the issue raised in the appeal will not "almost certainly recur," Green, 407 F.3d at 440, and that it will not evade review.

The government's point is that FDPA cases are extremely rare in this circuit -- Sampson's was the first FDPA conviction that we reviewed, see Sampson I, 486 F.3d at 17[6] -- and the particular issue in this appeal will arise even less frequently, making it implausible to consider the question in the appeal "systemically important," In re Sony, 564 F.3d at 4. This is too narrow a view of systemic importance. Federal courts often find error in capital cases. See Glossip v. Gross, 135 S. Ct. 2726, 2759 (2015) (Breyer, J., dissenting). Similar double-jeopardy challenges to subsidiary determinations by a sentencing jury in capital cases may well recur.

The government argues that the question presented will not evade review because Sampson can raise it after his resentencing. But this misses the point. The double-jeopardy challenge here asserts that Sampson should not have to defend once more against the two non-statutory aggravating factors at issue. Postponing review of the double-jeopardy challenge until after the second penalty-phase proceeding will frustrate the appeal's central assertion: that Sampson should not have to defend against

---

[6] This court also has pending the appeal in United States v. Tsarnaev (No. 16-6001), another death-penalty case.

- 12 -

these particular allegations again.  The claim would evade review because one of the most important protections of the Double Jeopardy Clause would be lost.  <u>Abney</u>, 431 U.S. at 662.

Sampson's appeal satisfies the stringent requirements of advisory mandamus, and we take jurisdiction.

III.

**<u>Double Jeopardy and Collateral Estoppel</u>**

Where, as here, an appeal raises "constitutional questions 'such as the district court's denial of a motion to dismiss . . . on the grounds of double jeopardy and collateral estoppel,'" our review is de novo.  <u>United States</u> v. <u>Lanoue</u>, 137 F.3d 656, 661 (1st Cir. 1998) (alteration in original) (quoting <u>United States</u> v. <u>Aguilar-Aranceta</u>, 957 F.2d 18, 21 (1st Cir. 1992), <u>overruled on other grounds by</u> <u>Yeager</u> v. <u>United States</u>, 557 U.S. 110 (2009)).

Sampson argues that the government's re-allegation of the non-statutory aggravating factors of future dangerousness and murder to obstruct justice violates the Double Jeopardy Clause.[7] The Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S.

---

[7]    Sampson also argued to the trial court that the future dangerousness factor was unconstitutionally unreliable and vague, and that the law of the case barred relitigating future dangerousness and murder to obstruct justice.  Those issues are not before this court.

- 13 -

Const. amend. V. He contends that the jury's special verdict on the two non-statutory aggravating factors is an "acquittal" for double-jeopardy purposes, and also that the collateral-estoppel component of the Double Jeopardy Clause bars relitigating the two factors. Neither argument is persuasive. We address each in turn.

A. The "Acquittal" Argument

The Supreme Court has explained that "the touchstone for double-jeopardy protection in capital-sentencing proceedings is whether there has been an 'acquittal.'" Sattazahn v. Pennsylvania, 537 U.S. 101, 109 (2003). In the context of aggravating circumstances at sentencing, the Court "reject[s] the . . . premise . . . that a capital sentencer's failure to find a particular aggravating circumstance alleged by the prosecution always constitutes an 'acquittal' of that circumstance for double jeopardy purposes." Poland v. Arizona, 476 U.S. 147, 155 (1986). Instead, an "acquittal" in the capital sentencing context turns on "whether the sentencer or reviewing court has 'decided that the prosecution has not proved its case' that the death penalty is appropriate." Id. (quoting Bullington v. Missouri, 451 U.S. 430, 443 (1981)); see also Bobby v. Bies, 556 U.S. 825, 833–34 (2009). If the decision being examined does not meet the standard of an acquittal, then the "clean slate" rule applies, Bullington, 451 U.S. at 443, and the defendant "constitutionally may be subjected

- 14 -

to whatever punishment is lawful, subject only to the limitation that he receive credit for time served," id. at 442.

The earlier penalty-phase jury's decision in Sampson's case is not an acquittal. Quite the opposite -- the jury found the death penalty justified, despite also finding that the government had not proven two non-statutory aggravating factors beyond a reasonable doubt to all members of the jury.

The Supreme Court has been clear that the "concern with protecting the finality of acquittals is not implicated when . . . a defendant is sentenced to death, i.e., 'convicted.' There is no cause to shield such a defendant from further litigation; further litigation is the only hope he has." Poland, 476 U.S. at 156. In Bobby v. Bies, the Court likewise held that there was no acquittal for double-jeopardy purposes where the original jury imposed the death sentence despite the presence of the mitigating factor of mental retardation, and a new hearing on the defendant's mental capacity was held in light of Atkins v. Virginia, 536 U.S. 304 (2002). 556 U.S. at 833-34. And in Sattazahn v. Pennsylvania, the Court held that a deadlocked sentencing-jury verdict automatically resulting in a life sentence was not an "acquittal" of the death penalty for double-jeopardy purposes. 537 U.S. at 109-110. The Court has been consistent in a variety of different factual circumstances. See also Bullington, 451 U.S. at 444-45 (verdict of life imprisonment in sentencing proceeding that

"explicitly requires the jury to determine whether the prosecution has 'proved its case'" for death is an acquittal of the death penalty for double-jeopardy purposes).

Double jeopardy clearly does not apply here. See Evans v. Michigan, 133 S. Ct. 1069, 1075 (2013) (contrasting substantive rulings that trigger double jeopardy, including rulings that go to insufficiency of evidence, or guilt and innocence, with procedural rulings "that 'are unrelated to factual guilt or innocence,'" such as "'a legal judgment that a defendant, although criminally culpable, may not be punished' because of some problem like an error with the indictment," and which do not trigger double jeopardy (quoting United States v. Scott, 437 U.S. 82, 98 & n.11 (1978))). Our vacation of Sampson's original death-penalty sentence on Sixth Amendment grounds based on juror misconduct does not change this analysis. That decision rested on the basis that a juror had improperly withheld material information to get on the jury, and "had nothing to do with either the sufficiency of the evidence or [Sampson's] guilt or innocence." United States v. Szpyt, 785 F.3d 31, 37–38 (1st Cir. 2015), cert. denied, 136 S. Ct. 800 (2016). Sampson was not acquitted, and the Double Jeopardy Clause is not triggered.

Sampson tries to marshal quotes from case law at the periphery of double-jeopardy jurisprudence in an effort to construe the original penalty-phase jury's determinations on the

- 16 -

non-statutory aggravating factors as an "acquittal." In particular, he points to Apprendi v. New Jersey, 530 U.S. 466 (2000), and cases interpreting it, to suggest an "expanding" of "the concept of 'acquittal,'" and to argue that "non-statutory as well as statutory aggravating factors are constitutionally significant under the FDPA." Sampson cites various non-binding decisions from other courts, see, e.g., State v. Sawatzky, 125 P.3d 722, 726 (Or. 2005) (en banc), as well as non-precedential dicta from a Supreme Court plurality opinion, Sattazahn, 537 U.S. at 110-12 (plurality opinion), that have reasoned from Apprendi to hold or suggest that double-jeopardy protections apply to jury determinations on sentencing enhancements even if there was never an acquittal on the death penalty. And he provides various cases discussing the relationship between the FDPA and Apprendi, as well as the FDPA and the Confrontation Clause, in an attempt to demonstrate the evolving "constitutional significance" of FDPA non-statutory aggravating factors.

But Apprendi is not a double-jeopardy case; its holding concerns what must be submitted to, and found to be proven beyond a reasonable doubt by, a jury in the first instance. Apprendi, 530 U.S. at 476. Here the jury in the first instance did properly find beyond a reasonable doubt that the death penalty should be imposed.

- 17 -

Our question is not what Apprendi requires of the FDPA, nor whether non-statutory aggravating factors are "constitutionally significant," but rather whether relitigating two non-statutory aggravating factors found not proven by an earlier penalty-phase jury is barred by the Double Jeopardy Clause. The Supreme Court's cases squarely addressing the question of what is an "acquittal" for double-jeopardy purposes control the question, and they compel rejection of Sampson's argument.[8] Because neither the original penalty-phase jury's verdict nor the vacatur of Sampson's sentence constitutes an acquittal, double-jeopardy principles do not prevent the government from alleging again the two non-statutory aggravating factors.

B. The Collateral-Estoppel Argument

Sampson argues at greater length that collateral estoppel, which "is embodied in the Fifth Amendment guarantee against double jeopardy," Ashe v. Swenson, 397 U.S. 436, 445 (1970), bars the relitigation of the two non-statutory aggravating

---

[8] Sampson argues that Roper v. Simmons, 543 U.S. 551 (2005), "indicates" that a lower court may depart from controlling Supreme Court precedent when it addresses "issues implicating the Eighth Amendment." Whatever Roper's implications for stare decisis in the Eighth Amendment capital punishment context -- an issue we do not address today -- we know of no support for such a proposition in the context of the Double Jeopardy Clause, and Sampson provides none.

- 18 -

factors.[9]  His argument again runs directly against Supreme Court precedent, and fares no better than his "acquittal" argument.[10]

As the Supreme Court explained in Bies, issue preclusion, also known as collateral estoppel, "bars successive litigation of 'an issue of fact or law' that 'is actually litigated and determined by a valid and final judgment, and . . . is essential to the judgment.'"  556 U.S. at 834 (alteration in original) (quoting Restatement (Second) of Judgments § 27 (1980)).  The Bies Court emphasized that "[a] determination ranks as necessary or essential only when the final outcome hinges on it."  Id. at 835 (citing 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4421, at 543 (2d ed. 2002)).

The Bies Court found that the issue for which collateral estoppel had been claimed -- evidence of the defendant's "mild to

---

[9]    One might wonder why, if a Fifth Amendment Double Jeopardy Clause argument that there was an acquittal on the merits fails, as a matter of logic there is still a double-jeopardy claim available to make.  No party makes an issue of this and both accept the analytical structure presented by Sampson, so we have done so as well.  We conclude that Bies, Sattazahn, and Poland resolve this question against Sampson.

[10]    The district court rejected Sampson's collateral-estoppel argument on two grounds.  It held that, because the penalty-phase jury's verdict was vacated for juror bias, the penalty-phase verdict does not have any preclusive effect.  And it held that collateral estoppel did not apply because "the rejection of [the non-statutory aggravating factors] was not essential to the judgment of death."  Because we find the latter rationale sufficient to dispose of the issue, it is unnecessary to address the effect of the vacatur for jury bias on Sampson's collateral-estoppel argument.

- 19 -

borderline mental retardation," which served as a mitigating factor in the original jury's sentencing deliberations, id. at 828 -- failed to meet this standard, id. at 835. The defendant had been sentenced to death by the original jury, and that sentence was affirmed on review by the Ohio appellate courts, with the Ohio Supreme Court "observ[ing] that Bies' 'mild to borderline mental retardation merit[ed] some weight in mitigation,' but conclud[ing] that 'the aggravating circumstances outweigh[ed] the mitigating factors beyond a reasonable doubt.'" Id. at 828 (second and fourth alterations in original) (quoting State v. Bies, 658 N.E. 2d 754, 761-62 (Ohio 1996)).

The Bies Court reasoned that "it [was] clear that the [Ohio] courts' statements regarding Bies' mental capacity were not necessary to the judgments affirming his death sentence." Id. at 835. The Court held that the Sixth Circuit, which found that collateral estoppel did apply to the issue of the defendant's retardation, erred by "conflat[ing] a determination necessary to the bottom-line judgment with a subsidiary finding that, standing alone, is not outcome determinative." Id. The Court concluded that "[i]ssue preclusion cannot transform Bies' loss at the sentencing phase into a partial victory." Id. The same is true here.

The two non-statutory aggravating factors rejected by the first penalty-phase jury were not necessary to Sampson's death

- 20 -

sentence. Indeed, "[f]ar from being necessary to the judgment," the jury's failure to find unanimously that the government proved the two non-statutory aggravating factors beyond a reasonable doubt, like the retardation mitigating factor in Bies, "cuts against [the judgment] -- making [it] quintessentially the kind[] of ruling[] not eligible for issue-preclusion treatment." Id. (quoting Bies v. Bagley, 535 F.3d 520, 533 (6th Cir. 2008) (Sutton, J., dissenting from denial of rehearing en banc)). And at least one other federal court has come to the same conclusion: that collateral estoppel does not bar the introduction at a second penalty-phase proceeding of non-statutory aggravating factors presented to, and not found proven by, an earlier penalty-phase jury. United States v. Stitt, 760 F. Supp. 2d 570, 584 (E.D. Va. 2010).

Sampson attempts unsuccessfully to distinguish Bies. He first observes that "the prior determination [in Bies] . . . was made by a court in an opinion" (emphasis omitted), whereas the prior determinations in this case "were made by a jury in special findings" (emphasis omitted). He contrasts the "spare statements" reviewed in Bies, 556 U.S. at 834, with the more elaborate process of the special findings at issue here. But the collateral-estoppel principle articulated in Bies makes no distinction between judge- and jury-made determinations, nor any distinction based on the

procedure for making the determination -- it focuses on whether the determination was necessary to the prior judgment.

Sampson also argues that unlike here, where the issues being relitigated are legally identical to issues in the prior determination, the issue in the second proceeding in Bies -- whether, under the rule announced in Atkins, the defendant's retardation rendered him ineligible for the death penalty -- involved a legal principle that was new and different from the prior determination. He argues that the Court noted that novelty as another basis for not finding collateral estoppel. See Bies, 556 U.S. at 836-37. But the Court made the observation that this would be an alternative ground to reject the collateral-estoppel argument "even if the core requirements for issue preclusion had been met," id. at 836; its essential point was that, as here, those core requirements were not present.

All of Sampson's other purported distinctions[11] share the same flaw. They do not affect the principle articulated in Bies

_____

[11] Sampson argues that here, unlike in Bies, there was "every incentive" to fully litigate the non-statutory aggravating factors; that the non-statutory factors must be proven beyond a reasonable doubt under the FDPA, unlike the Ohio mitigating factors at issue in Bies; that the appeal in Bies, unlike Sampson's, "was governed by the limitations on federal habeas review of state judgments"; and that Bies involved a "second run at vacating [the defendant's] death sentence," 556 U.S. at 834 (quoting Bagley, 535 F.3d at 531 (Sutton, J., dissenting from denial of rehearing en banc)), and "not an effort by the State to retry him or to increase his punishment," id. The government correctly notes that none of these distinctions is material to the collateral-estoppel

that collateral estoppel requires a determination that is essential to the prior judgment. That principle dictates that we reject Sampson's collateral-estoppel argument. There is simply no way the two non-statutory aggravating factors at issue here were essential to the first jury's death sentence.[12]

Sampson further contends that a number of other decisions of federal courts provide alternative analyses that support his collateral-estoppel claim. They do not. He relies on language in this court's decision in United States v. Bravo-Fernandez, 790 F.3d 41 (1st Cir. 2015), cert. granted, 136 S. Ct. 1491 (2016), including that collateral-estoppel claims "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings," id. at 46 (quoting Ashe, 397 U.S. at 444), and that "if a review of [the record of the prior proceeding] shows that a 'rational jury,' as a practical matter, decided adversely to the government an issue to be relitigated in the new prosecution, then the defendant gets the benefit of collateral estoppel," id. But that language comes from an inquiry

_____

principles articulated by the Bies Court and the Second Restatement of Judgments.

    [12]    The government admitted at oral argument that as a matter of logic its position is that a sentencing jury's determinations on non-statutory aggravating factors can never be essential to the judgment in an FDPA case, because non-statutory aggravating factors are neither necessary to nor sufficient for the imposition of the death penalty under the FDPA.

- 23 -

into the preclusive effect of acquittals on an attempt to prove various facts in a retrial of vacated convictions arising from the same split verdict.  See id. at 43, 48.  In other words, the determinations at issue in Bravo-Fernandez were potentially necessary to the prior judgment; the determinations that Sampson attacks could not have been.

Sampson's reliance on Delap v. Dugger, 890 F.2d 285 (11th Cir. 1989), abrogated on other grounds by Floyd v. Sec'y, Fla. Dep't of Corr., 638 F. App'x 909, 924 (11th Cir. 2016) (per curiam) (citing Fry v. Pliler, 551 U.S. 112, 119-20 (2007), and Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)) is equally misplaced.  He argues that the case illustrates "that an impact on the express terms of a judgment is not an absolute prerequisite for collateral estoppel."  This proposition is simply not so, and misconstrues Delap.  Delap, in any event, does not control our decision.  Delap was decided in 1989, 27 years ago, and well before Sattazahn and Bies, the Supreme Court cases that dictate our holding.

Delap concerned a trial in which the prosecution pursued multiple theories of guilt on one count of murder.  The defendant was convicted of murder on one theory (first-degree premeditation), and the trial judge found that there was insufficient evidence to convict the defendant on a theory that the murder was committed during a felony.  890 F.2d at 308-12. The Eleventh Circuit first held that the insufficiency-of-the-

- 24 -

evidence finding on the theory that there was a concomitant felony constituted an acquittal, because the finding "decide[d] that the prosecution has not proved its case."  Id. at 313 (quoting Bullington, 451 U.S. at 443).  It then asked whether the felony murder acquittal as to guilt "bar[red on retrial] a finding that the murder occurred during the commission of a felony so as to constitute an aggravating factor justifying imposition of the death penalty."  Id. at 314.  The court emphasized that "in this case Delap's acquittal of felony murder occurred during the guilt/innocence phase of his first trial."  Id. at 318.  It distinguished and said that it "need not address what collateral estoppel effect, if any, would result had the jury at the sentencing phase of Delap's first trial concluded that he had not committed murder during the course of a felony."  Id.  Sampson pled guilty, and his challenge concerns the collateral-estoppel effect of one sentencing-phase determination on another.  Delap is inapposite.

As we explained in Manganella v. Evanston Ins. Co., 700 F.3d 585 (1st Cir. 2012), another case Sampson cites: "We do not ask whether the resolution of an issue was necessary to reach the same outcome; rather, the inquiry is whether the issue was necessary to the decision actually rendered."  Id. at 594.  By that standard, his argument fails: the non-statutory aggravating factors simply could not have been "necessary to the decision

actually rendered." Id.; see Bies, 556 U.S. at 835.  Because the non-statutory aggravating factors were not necessary to the determination of his original death sentence, the government may relitigate them at the new penalty-phase proceeding.

In the end, Sampson's argument is that there should be a more relaxed standard for collateral-estoppel claims in the context of capital sentencing.  But the Supreme Court's scrupulous doctrinal reliance on the Second Restatement of Judgments in Bies, 556 U.S. at 834, makes clear that the core requirements of collateral estoppel apply with full force in the capital-sentencing context.  Sampson's argument fails to meet those requirements.

Finally, Sampson makes a vague "Eighth Amendment values" argument trying to strengthen his collateral-estoppel position. He emphasizes the general principle that "[the Supreme] Court has demanded that factfinding procedures aspire to a heightened standard of reliability," Ford v. Wainwright, 477 U.S. 399, 411 (1986) (plurality opinion), and argues from it that "[r]eliability could only be impaired by allowing prosecutors multiple opportunities to pursue particular aggravating factors."  The argument cannot save a double-jeopardy claim when the claim fails on its own terms.

The district court correctly ruled that it would not strike the government's notice of intended use of the non-statutory

aggravating factors of future dangerousness and murder to obstruct justice because the earlier jury's findings were not an acquittal, nor were they essential to the jury's death sentence.  The Double Jeopardy Clause does not bar the government from alleging those non-statutory aggravating factors again at Sampson's new penalty-phase proceeding.

IV.

The order of the district court is <u>affirmed</u>.